# No. 15-___

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

—————————

EQUIFAX INFORMATION SERVICES, LLC,

*Defendant–Petitioner,*

v.

DONNA K. SOUTTER,

for herself and on behalf of all similarly situated individuals,

*Plaintiffs–Respondents.*

—————————

On Appeal from United States District Court for the
Eastern District of Virginia, Richmond Division, No. 3:10-cv-107-REP

—————————

## DEFENDANT'S PETITION FOR LEAVE TO APPEAL
## CLASS CERTIFICATION ORDER PURSUANT TO
## FEDERAL RULE OF CIVIL PROCEDURE 23(f)

—————————

Paul D. Clement
Jeffrey M. Harris
BANCROFT PLLC
1919 M Street, N.W., Suite 470
Washington, DC  20036

Jeffrey S. Bucholtz
David M. Barnes
KING & SPALDING LLP
1700 Pennsylvania Ave., N.W.
Washington, D.C.  20006

Phyllis B. Sumner
Merritt E. McAlister
Zachary A. McEntyre
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA  30309

*Counsel for Defendant-Petitioner*

April 29, 2015

## CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 and Local Rule 26.1, petitioner Equifax Information Services, LLC makes the following disclosure:

1.      Is party/amicus a publicly held corporation or other publicly held entity?

No.

2.      Does party/amicus have any parent corporations?

Yes

If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

Equifax Inc.

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?

Yes

If yes, identify all such owners:

Equifax Inc.

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?

No

5.      Is party a trade association?

No

6.      Does this case arise out of a bankruptcy proceeding?

No

 /s/ Jeffrey S. Bucholtz
Jeffrey S. Bucholtz

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ............................................................................. 1

BACKGROUND ............................................................................. 4

QUESTIONS PRESENTED ............................................................. 8

REASONS FOR GRANTING THE PETITION ................................ 9

I.  THE DISTRICT COURT FAILED TO ADEQUATELY ADDRESS THE SIGNIFICANT PROBLEMS WITH ASCERTAINING THE MEMBERS OF THE PROPOSED CLASS. ................................... 9

II.  THE DISTRICT COURT ERRED IN FINDING THAT COMMON ISSUES PREDOMINATE. ........................................................ 15

III.  THIS CLASS ACTION IS NOT THE "SUPERIOR" MEANS OF ADJUDICATION. ...................................................................... 17

CONCLUSION ............................................................................. 20

CERTIFICATE OF SERVICE

ADDENDUM

District Court Memorandum Opinion Granting Class Certification, *Soutter v. Equifax Information Services, LLC*, No. 3:10-cv-107-REP (E.D. Va. Apr. 15, 2015) .............................. Exhibit A

# TABLE OF AUTHORITIES

## Cases

*Carrera v. Bayer Corp.*,
   727 F.3d 300 (3d Cir. 2013).................................................................... 10, 14

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996)...............................................................................19

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ....................................................................................17

*EQT Prod. Co. v. Adair*,
   764 F.3d 347 (4th Cir. 2014)................................................................... passim

*Grimes v. Rave Motion Pictures Birmingham, L.L.C.*,
   264 F.R.D. 659 (N.D. Ala. 2010).....................................................................18

*Harper v. Trans Union, LLC*,
   No. 04-3510, 2006 WL 3762035 (E.D. Pa. Dec. 20, 2006)..............................18

*Hayes v. Wal-Mart Stores, Inc.*,
   725 F.3d 349 (3d Cir. 2013).............................................................................15

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   522 F.3d 6 (1st Cir. 2008) ...............................................................................19

*In re Rhone-Poulenc Rorer, Inc.*,
   51 F.3d 1293 (7th Cir. 1995)............................................................................19

*Johnson v. Kan. City S.*,
   224 F.R.D. 382 (S.D. Miss. 2004) ...................................................................11

*Lienhart v. Dryvit Sys., Inc.*,
   255 F.3d 138 (4th Cir. 2001)..........................................................................2, 9

*Singletery v. Equifax Info. Servs., LLC*,
   No. 09-489, 2011 WL 9133115 (N.D. Ala. Sept. 22, 2011)..............................18

*Soutter v. Equifax Info. Servs., LLC*,
   498 F. App'x 260 (4th Cir. 2012) ............................................................ passim

*Stillmock v. Weis Mkts., Inc.*,
   385 F. A'ppx 267, 273 (4th Cir. 2010) .............................................................20

*Thorn v. Jefferson-Pilot Life Insurance Co.*,
   445 F.3d 311 (4th Cir. 2006)............................................................................19

*Ticknor v. Rouse's Enters., L.L.C.*,
  592 F. App'x 276 (5th Cir. 2014) (per curiam) ................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .......................................................... 3, 9, 16

**Statutes**

15 U.S.C. § 1681 ................................................................................18

15 U.S.C. § 1681n ..............................................................................18

**Rules**

Fed. R. Civ. P. 23 ..............................................................................17

**Other Authorities**

7A Charles Alan Wright et al.,
  Federal Practice & Procedure § 1760 (3d ed. 2005) .......................................10

## INTRODUCTION

This is the second time this putative class action has appeared before this Court. *Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260 (2012). Plaintiff Donna Soutter alleges that Equifax Information Services, LLC willfully violated the Fair Credit Reporting Act ("FCRA") by failing to follow "reasonable procedures to assure maximum possible accuracy" and inaccurately including in her credit report a judgment that had been set aside. Ms. Soutter seeks to represent a class of Virginia residents whom she believes experienced similar inaccuracies.

During the five years this case has been pending, the class definition has changed *seven* times. The district court's first certification was fundamentally flawed in several independent ways, but this Court reached only one of those issues—Ms. Soutter's claim was atypical—in vacating the order and directing the district court to perform the required "rigorous analysis" if Ms. Soutter sought certification again. *Id.* at 265–66. On remand, Ms. Soutter redefined her proposed class, and the district court redefined it further in its second certification order. Yet significant problems remain. In granting recertification, the district court (i) misapplied this Court's most recent class-action precedent, *EQT Production Co. v. Adair*, 764 F.3d 347 (2014), (ii) mislabeled individual issues as common ones, and (iii) improperly focused on whether Equifax had proven that the case could *not* be maintained as a class action, rather than on whether Ms. Soutter had met her

1

burden to prove that it could be. The court's order puts significant, unjustified pressure on Equifax to settle, contains "substantial weakness[es]," and provides this Court with an ideal vehicle to clarify important areas of class-action law. *See Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 144–46 (4th Cir. 2001). This Court should grant Equifax's Rule 23(f) petition and correct the district court's errors.

*First*, the district court's ascertainability analysis conflicts with *Adair*, in which this Court clarified that certification is improper in the face of potentially insurmountable problems in determining who is in the class. 764 F.3d at 358–59. The district court incorrectly dismissed those problems as mere "manageability" concerns. Op. 18–19 (Ex. A). But a proper ascertainability analysis shows that Ms. Soutter has not come close to carrying her burden to prove the class is "readily identifiable" through objective and workable means. *Adair*, 764 F.3d at 358. The proposed procedures for identifying class members are convoluted and subjective and would require a case-by-case analysis of thousands of individual records (many of which do not currently exist). Worse still, that process would very likely sweep into the class persons for whom Equifax never issued an inaccurate report. The inability to determine in a straightforward, objective, and accurate manner who belongs in the proposed class requires vacating the district court's order.

*Second*, the district court manifestly erred in applying Rule 23(b)(3)'s predominance requirement by mislabeling the key issue—whether each would-be

claimant's credit report was accurate—a common question. The court reasoned that accuracy can be determined using a "common" database. Op. 30. But a question is common only if it can be resolved "in one stroke" across the class. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Whether any person's report was inaccurate cannot be resolved without assessing that person's own report; finding that someone else's report was inaccurate does not answer the question. The court compounded this error by minimizing the difficulties of deciding the amount of statutory damages to award each class member—which even the court recognized was an individual issue. Indeed, this Court emphasized in the first appeal that "Soutter is claiming only statutory damages, *which typically require an individualized inquiry*." 498 F. App'x at 265 (emphasis added).

*Finally*, the district court, as in its first certification order, again failed to meaningfully consider whether a class action was the superior method for resolving this dispute. The reasonableness of Equifax's procedures for collecting judgment-disposition data is (by Ms. Soutter's own admission) untested. That makes this case a particularly poor candidate for class certification because certification, by its very nature, puts significant pressure on Equifax to settle rather than test Ms. Soutter's novel theory. Moreover, ready alternatives and ample incentives exist to try cases like this individually: successful FCRA plaintiffs may recover actual or statutory damages, attorney's fees, and (in some cases) punitive

damages. Even if damages are small, there are more than sufficient incentives for a plaintiff with a meritorious claim to bring suit on an individual basis.

## BACKGROUND

In June 2007, Ms. Soutter fell behind on her credit card payments to Virginia Credit Union and it sued her in the Richmond General District Court. Op. 9. Ms. Soutter and the credit union worked out a payment plan, but the credit union failed to alert the court to its agreement to dismiss the suit and the court entered a default judgment against Ms. Soutter. *Id.* The court granted the credit union's motion to set aside the judgment and dismissed the case in March 2008. *Id.*

Two months later, in May 2008, Ms. Soutter sent Equifax a letter explaining that the judgment had been entered in error. *Id.* Equifax advised Ms. Soutter that the judgment was not recorded in her credit file and thus no action was required. *Id.* In December 2008, Equifax received a second letter from Ms. Soutter, disputing the judgment and enclosing a copy of the order dismissing the case. Op. 9–10. At that time, the judgment was in Ms. Soutter's credit file, so Equifax removed the judgment and sent Ms. Soutter a letter explaining that it had done so. Op. 10. Ms. Soutter alleges, however, that Equifax furnished three credit reports to third parties containing the judgment. *Id.*

In February 2010, Ms. Soutter filed this action in the Eastern District of Virginia, alleging that Equifax violated the FCRA by using willfully unreasonable

procedures in collecting and reporting the dispositions of judgments from the Virginia courts, resulting in inaccurate credit reports. Those procedures involved a contract with LexisNexis to collect public-records information, including civil judgments and their ultimate dispositions. Op. 6. Ms. Soutter alleges that LexisNexis's method of collecting judgment *dispositions* (*e.g.*, satisfactions, dismissals, and appeals), as opposed to judgment-*entry* information, was inadequate and that as a result Equifax continued to show judgments on credit reports after they had been satisfied, dismissed, vacated, or appealed. *See* Op. 5–7.

Ms. Soutter initially sought to represent "[a]ll consumers for whom Equifax furnished a consumer report which reported a judgment that was either set aside, vacated or dismissed with prejudice." *Soutter*, 498 F. App'x at 262–63. That class definition changed several times before, through, and after the district court's first certification order. *Id.* at 263. The district court eventually certified a class of "[a]ll natural persons" about whom Equifax issued credit reports for non-employment purposes from February 17, 2008 to February 17, 2010 "at a time when any Virginia General District Court or Circuit Court judgment that had been satisfied, appealed, or vacated in the court file more than 30 days earlier was reported in Equifax's file as remaining unpaid[.]" *Id.*

This Court granted Equifax's Rule 23(f) petition and vacated the certification decision because the panel found a fatal typicality problem with Ms.

Soutter's claim. *Id.* at 265–66. Because the means by which LexisNexis gathered public-records data from the various Virginia circuit and general district courts varied significantly during the class period, the Court explained that "[p]roof that Equifax's behavior was unreasonable because of the manner in which LexisNexis collected data from the Richmond General District Court in [Ms.] Soutter's case [in 2008] does not 'advance' the claim of a class member whose judgment was from a circuit court in 2010." *Id.* at 265. Having found a threshold typicality problem, the Court vacated the district court's decision without addressing Equifax's challenges relating to ascertainability, predominance, and superiority. *Id*. at 266 n.*. The Court directed the district court to perform the required "rigorous analysis" if Ms. Soutter sought certification again on remand. *Id*.

On remand, Ms. Soutter narrowed her proposed class definition in an effort to avoid the problems with the class originally certified. ECF Nos. 131, 132. Recognizing the disparate procedures LexisNexis used in gathering disposition data from Virginia's *circuit* courts, she limited the class to persons with judgments entered and later satisfied, set aside, or appealed in a *general district* court. *See* Op. 6–7; *Soutter*, 498 F. App'x at 262. And recognizing that LexisNexis's procedures for collecting data from the general district courts changed after December 2009, Ms. Soutter limited the class period to February 17, 2008 to April 1, 2009, a period during which LexisNexis received "bulk feed" disposition data

from the Virginia Supreme Court.  Op. 7.  She also asserted that Equifax, relying on a third-party declaration, had conflated the collection of judgment-*entry* information—which involved varying procedures across jurisdictions—with the collection of judgment-*disposition* information—which was collected electronically from the Virginia Supreme Court.  *See* ECF No. 158, at 10.[1]

The district court agreed that new evidence on remand showed that LexisNexis followed "materially similar procedures for the automated collection of judgment *disposition* information" during the narrowed class period, eliminating one potential source of variation across the proposed class.  Op. 7.  Even then, however, the court noted that Ms. Soutter's proposed class definition was flawed, but—as in its first certification order—the court modified the definition in an effort to cure its defects.  Op. 22, 57–58.  The court ultimately certified a class composed of all persons who meet each of four requirements (Op. 84–85):

1.  [T]he computer database of the Executive Secretary of the Supreme Court of Virginia shows that the person was the defendant in a Virginia General District Court civil action or judgment;

2.  [T]he computer database of the Executive Secretary of the Supreme Court of Virginia shows that as of the date 20 days after the Court's certification of

---

[1]  Equifax regrets the confusion concerning this distinction between the circumstances surrounding the collection of these two types of public-records data. This issue is immaterial to this petition, because the recertification order narrowed the class to focus on a time period when LexisNexis had electronic access to disposition data, thus avoiding any issue about the effect of any difference in collection procedures, and—despite that narrowing—the recertification order is erroneous for the reasons set forth in this petition.

this class, the civil action or judgment was dismissed, satisfied, appealed, or vacated on or before April 1, 2009 ("the disposition date");

3. Equifax's records note receipt of a communication or dispute from that person about the status of a civil action or judgment that was dismissed, satisfied, appealed, or vacated; and

4. Equifax's records note that a credit report regarding the person was furnished to a third party who requested the credit report, other than for an employment purpose: (1) no earlier than February 17, 2008, (2) no later than February 21, 2013, (3) after the date that Equifax's records note its receipt of the consumer communication or dispute regarding the judgment status, and (4) after the disposition date and at least thirty (30) days before the judgment notation was corrected (if it has been corrected) by Equifax to report that it was dismissed, satisfied, appealed or vacated.

## QUESTIONS PRESENTED

1.     Can a class-action plaintiff carry her burden to prove that a proposed class is ascertainable where class members can be identified only through convoluted, subjective, and potentially inaccurate procedures and where much of the information needed to identify class members does not currently exist?

2.     Do common issues predominate where individualized questions of liability and damages—including determining the accuracy of every would-be claimant's credit report and the appropriate amount, if any, of statutory damages—predominate over any potential common questions related to Equifax's procedures for obtaining public-records information?

3.     Is a class action superior to individual actions where the question of liability is untested, certification will exert significant settlement pressure, and there are numerous incentives to bring individual actions (even for small claims)?

## REASONS FOR GRANTING THE PETITION

A party cannot rest on untested allegations that Rule 23 will be satisfied at trial. *Dukes*, 131 S. Ct. at 2551. Instead, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Id.* To ensure that Ms. Soutter carried this burden, the district court was required to engage in a "rigorous analysis" of the claims, defenses, relevant facts, and substantive law to determine whether the claims can be tried on a class-wide basis. *Adair*, 764 F.3d at 355.

Rule 23(f) review plays a critical role in that rigorous analysis and in protecting defendants' due process rights, for it allows the appellate court to review and correct errors in certification orders that, due to the inevitable settlement pressures associated with class certification, might otherwise evade review. *Lienhart*, 255 F.3d at 144–46. Although the class definition has narrowed, many of the same issues that previously precluded certification remain unaddressed. These errors warrant immediate appellate review.

## I.   THE DISTRICT COURT FAILED TO ADEQUATELY ADDRESS THE SIGNIFICANT PROBLEMS WITH ASCERTAINING THE MEMBERS OF THE PROPOSED CLASS.

Despite litigating this case for more than five years, Ms. Soutter has yet to show that identifying her proposed class members is possible, much less readily feasible based on existing information. As this Court has "repeatedly recognized," Rule 23 contains "an implicit threshold requirement that the members of a

proposed class be 'readily identifiable.'" *Adair*, 764 F.3d at 358. "[I]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.* If identifying class members will involve extensive "administrative challenges" or "burden[s]" likely to result in disputes between the parties, the class is not ascertainable. *Id.* at 360; 7A C.A. Wright et al., Fed. Prac. & Proc. § 1760 (3d ed. 2005). And "[a] plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful." *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013). Instead, because "actual, not presumed, conformance with Rule 23(a) [is] . . . indispensable," Ms. Soutter had to prove, with evidence, that her proposed class members were objectively and readily identifiable from previously existing information. *Adair*, 764 F.3d at 361–62.

The district court refused to consider the feasibility of determining class membership in its ascertainability analysis. Instead, it dismissed these concerns as "manageability" issues to be "balanced" against the viability of individual suits—in other words, relegated to the "superiority" analysis. Op. 18–19. That approach is flatly inconsistent with this Court's recent decision in *Adair*.

In *Adair*, this Court reversed a certification order that "failed to rigorously analyze whether the administrative burden of identifying class members . . . would render class proceedings too onerous." 764 F.3d at 358. In that case, which dealt

with claims regarding the ownership of subsurface methane gas rights, the named plaintiff had shown that "local land records" existed showing ownership of these gas rights but had not yet begun the process of identifying the class members using those records. *Id.* at 359. The Court reversed the certification order, holding that the plaintiff had failed to prove that the class could be "readily identified." *Id.* The Court explained that identifying the proposed class members would likely involve a number of "heirship, intestacy, and title-defect issues" that would "pose a significant administrative barrier to ascertaining the [class]." *Id.*; *see also Johnson v. Kan. City S.*, 224 F.R.D. 382, 389 (S.D. Miss. 2004).

The same types of "administrative barrier[s]" that were fatal to certification in *Adair* are fatal to certification here. Perhaps the only thing more complex than the class definition itself is Ms. Soutter's proposal for ascertaining who is in the class. First, Ms. Soutter says she will gather information on potentially thousands of consumers from the Virginia Supreme Court database to identify consumers who had judgments entered but subsequently dismissed, satisfied, or appealed. *See* ECF No. 206, at 12–14. She would then compare that list to so-called "frozen scans" of Equifax's database for various historical time periods to determine (i) if the judgment was recorded in the consumer's credit file; (ii) if and when Equifax updated the consumer's file to reflect the disposition of that judgment; and (iii) if and when Equifax provided a credit report containing the no-longer-in-force

11

judgment to a third party. *Id.* at 15. Finally, Ms. Soutter would review a separate Equifax database of disputes and other communications from consumers to determine if and when Equifax was on "notice" that a judgment entered against the consumer had been subsequently dismissed, satisfied, or appealed. *Id.* at 14.

There are a number of significant administrative challenges with this convoluted, multi-step process for determining class membership. Ms. Soutter's proposal to use frozen scans of Equifax's historical records of credit files, for example, poses a potentially insurmountable administrative burden in and of itself. Frozen scans of consumer files must be created—they do not simply exist—and once created, there are significant limitations on the data they provide. ECF No. 209, at 11–12. Specifically, frozen scans record only a snapshot of what was in a particular consumer's file on a particular day—typically the last day of the month. *Id.* A consumer's March 2008 frozen scan, for example, would show what the consumer's credit file looked like at the end of March 2008. *Id.* It will not show *when* a particular disposition was recorded—yet that information is necessary to determine whether any given individual has a viable claim. *Id.*

The district court amended the class definition (yet again) in an effort to avoid the frozen scan problem by changing the requirement that a credit report be furnished "at least thirty (30) days after the [judgment] disposition date" to "at least thirty (30) days 'before the judgment notation was corrected.'" Op. 22. But

the district court's efforts fall short and fail to ensure that only individuals for whom an inaccurate credit report was issued will be included in the class. For example, if a judgment was deleted from a credit file on a date falling between two frozen scans (such as between December 31, 2008 and January 31, 2009), it would be impossible to tell from the January 2009 frozen scan when the judgment was deleted. If the frozen scan indicated that a credit report was issued on January 20, 2009, there would be no way to know whether the judgment was deleted before or after the report was issued—and thus no way to determine whether the report was "inaccurate." *See Soutter*, 498 F. App'x at 264 (inaccuracy is a necessary 15 U.S.C. § 1681e(b) element).

Moreover, while the district court sought to limit the class to only those consumers for whom Equifax received "notice" of a dispute "about the status of a civil action or judgment that was dismissed, satisfied, appealed or vacated," Op. 18, 84, determining whether Equifax was on "notice" of a consumer's dispute with respect to a disposed judgment would be far from straightforward. Each consumer file must be manually reviewed to determine whether a noted dispute concerned the particular judgment at issue. *See* ECF No. 209, at 15–16. But even that burdensome and highly individualized review process would often fail to produce a clear answer: because consumer communications are frequently unclear, determining whether any given "notice" actually put Equifax on notice that a

13

particular judgment had been satisfied would inevitably require judgment calls and likely court intervention.[2]  *Id.*  Like determining ownership in *Adair*, determining whether a communication was sufficient to put Equifax on "notice" of a dispute about a judgment would likely devolve into a series of "mini-trials" regarding individual consumers—exactly what Rule 23 forbids.  *Adair*, 764 F.3d at 358.

Despite these obstacles, Ms. Soutter assured the district court that she could construct the class list and argued that any difficulties associated with Equifax's data should be ignored since courts "do not look favorably on arguments" that a defendant's business records "are not accurate enough to define a class."  ECF No. 206, at 12; *see* ECF No. 215, at 5–10.  But "[a] plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful."  *Carrera*, 727 F.3d at 306.  Rather, because "'actual, not presumed, conformance with Rule 23(a) [is] . . . indispensable,'" Ms. Soutter had to prove that her proposed class was, "in fact, objectively and readily identifiable from

---

[2] Even the district court recognized that "the language of some consumer communications may require a degree of interpretation."  Op. 18.  In addition, Ms. Soutter's own claim highlights another respect in which individual review of consumers' notices would likely be needed: she submitted her notice *before* the judgment at issue was reflected in her credit file, whereas many if not most of the persons she seeks to represent submitted their notice *after* the judgment was reported.  The contents of such pre- vs. post-reporting notices, the actions they request of Equifax, and the feasibility of Equifax's taking those actions would all differ, likely making Ms. Soutter's claim atypical.  *See* ECF No. 209, at 30–35.  Indeed, this Court emphasized in the first appeal that Ms. Soutter's preemptive notice "bears upon whether Equifax's behavior was willful."  498 F. App'x at 265.

existing information." *Adair*, 764 F.3d at 362. Nor could she escape that obligation by blaming Equifax: "[T]he nature or thoroughness of a defendant's recordkeeping does not alter the plaintiff's burden to fulfill Rule 23's requirements." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 356 (3d Cir. 2013) (vacating class certification on ascertainability grounds). Because Ms. Soutter failed to carry her burden of proving that the class she sought to represent was ascertainable, this Court should grant review and reverse.

## II.    THE DISTRICT COURT ERRED IN FINDING THAT COMMON ISSUES PREDOMINATE.

To establish her § 1681e(b) claim, Ms. Soutter must prove that (i) Equifax did not follow "reasonable procedures to assure maximum possible accuracy;" (ii) that failure caused an inaccuracy in her credit report; and (iii) the failure was "willful." *Soutter*, 498 F. App'x at 264. Resolving these elements will involve a host of individual issues. The district court, however, mislabeled individual issues as common ones and thus found erroneously that common issues predominate.

Whether any given credit report contains an inaccuracy is an inherently individual issue. The court would have to review each issued credit report and compare it to judgment-disposition information for each putative class member to determine whether a report for that person contained an inaccurately recorded judgment. ECF No. 209, at 25–28. Nonetheless, the district court held that inaccuracy was a "common issue" because whether a report was inaccurate could

purportedly be determined by comparing Equifax's records to the Virginia Supreme Court database—which the court termed a "common" database. *See* Op. 30–32. Even if (contrary to fact) this task were administratively feasible, the district court is simply wrong. Under *Dukes*, a question is common if it generates a "common answer" such that resolving the question for the class representative will resolve it for every other member in "one stroke." 131 S. Ct. at 2551. That is plainly not the case here. Proving whether Ms. Soutter's credit report was inaccurate will do nothing to show that any other person's report was inaccurate.

To make matters worse, the district court glossed over the daunting administrative burdens and unresolved feasibility questions concerning Ms. Soutter's plan to compare information that supposedly is readily available in the two databases to determine whether credit reports for the individuals she seeks to represent were inaccurate. As explained above, Ms. Soutter failed to demonstrate that the comparison she envisions can even be done in an accurate and objective way given the limitations in the data available. *See supra* at 11–15. As a result, the district court did not simply make a technical error in classifying this key issue as common rather than individual—it grossly oversold the relative weight of "common" issues in the predominance balance by treating "the determinations required [relating to accuracy as] simple, straightforward, and objective." Op. 74.

Finally, the district court recognized that statutory damages were not a

common issue.  Op. 49.  Whether an individual plaintiff (or class member) should receive $100 or $1,000 or somewhere in between will depend on a host of individual issues relating to that person's claim.  That is exactly why this Court, in 2012, noted that "statutory damages . . . typically require an individualized inquiry."  *Soutter*, 498 F. App'x at 265.  The district court, while acknowledging the individual nature of this issue, largely dismissed it as not affecting the predominance balance.  Op. 77–79.  But the court relied on cases predating the Supreme Court's decision in *Comcast Corp. v. Behrend*, where the Court found that "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class."  133 S. Ct. 1426, 1432–33 (2013).  When the difficulty of determining the amount of statutory damages for each class member on an individual basis is properly weighed, it confirms that any common issues here do not predominate.

## III.  THIS CLASS ACTION IS NOT THE "SUPERIOR" MEANS OF ADJUDICATION.

The district court also erred in holding that this class action is "superior to other available methods for fairly and efficiently adjudicating th[is] controversy."  Fed. R. Civ. P. 23(b)(3).  The FCRA makes individual suits a practical alternative, even for small claims; this is hardly a context where it is a class action or nothing.

In addition to allowing recovery of actual damages—which Ms. Soutter has

17

waived in an effort to eliminate this inherently individual issue[3]—Congress provided the alternative of statutory damages within a \$100–\$1,000 range, anticipating that amounts will vary with consumer-specific evidence. 15 U.S.C. § 1681n(a)(l)(A). Congress further incentivized individual suits by providing for punitive damages, *id.* § 1681n(a)(2), and authorizing attorney's fees in "any successful action" establishing willful or negligent violations, *id.* §§ 1681n(a)(3), 1681n(a)(2). As a result, courts have often held that putative FCRA class actions fail the superiority requirement. *See Grimes v. Rave Motion Pictures Birmingham*, 264 F.R.D. 659, 667 (N.D. Ala. 2010) ("[B]ecause FCRA provides for an award of attorney's fees and costs in addition to statutory damages, there is no financial impediment [preventing a would-be plaintiff] from finding a good lawyer to bring an individual claim."); *Singletery v. Equifax Info. Servs.*, No. 09-489, 2011 WL 9133115, at *24 (N.D. Ala. Sept. 22, 2011) (similar); *Harper v. Trans Union,* No. 04-3510, 2006 WL 3762035, at *10 (E.D. Pa. Dec. 20, 2006) (similar).

This Court held similarly in *Thorn v. Jefferson-Pilot Life Insurance Co.*, which was brought under civil rights statutes that, like the FCRA, contain a fee-

---

[3] Ms. Soutter's waiver of any claim to actual damages underscores why the proposed class fails on both typicality and ascertainability. To the extent some class members would *not* want to waive a claim to actual damages, Ms. Soutter is not a typical class representative. And it is impossible to know in advance *which* class members would want to limit their claims to statutory damages, which further shows why the proposed class is not reasonably ascertainable.

shifting provisions. 445 F.3d 311, 321 (4th Cir. 2006). There, this Court agreed with the district court's finding that the "small amount of each class member's claim would not dissuade an attorney from taking class member's individual cases because 42 U.S.C.A. § 1988 allows prevailing plaintiffs . . . to recover attorney's fees." *Id.* at 328–29; *see also Ticknor v. Rouse's Enters*, 592 F. App'x 276, 279 (5th Cir. 2014) (per curiam) (similar). Indeed, in this case, Ms. Soutter's counsel urged the court to certify the class or else he would "flood[] the courts with individual cases." *See* 12/21/2011 Hr'g Tr. 48; *cf. Castano v. Am. Tobacco Co*., 84 F.3d 734, 748 (5th Cir. 1996) (noting that "plaintiffs' counsel . . . has promised to inundate the courts with individual claims if class certification is denied").

Certification is particularly unwarranted here because no published decisions address the reasonableness of judgment-disposition collection methods like those at issue. *See* 12/21/2011 Hr'g Tr. at 48 (Ms. Soutter agreeing that "there aren't any court decisions saying that what [Equifax is] doing is wrong"). Courts consistently have recognized that allowing novel claims carrying enormous aggregated damages to proceed initially as a class action creates settlement pressure that threatens to ensure that the merits of those novel claims are never tested. *See, e.g.*, *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 26 (1st Cir. 2008); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1299 (7th Cir. 1995).

Despite these compelling factors cutting against certification, the district

19

court acted as if this Court's decision in *Stillmock v. Weis Mkts., Inc.*, 385 F. A'ppx 267, 273 (4th Cir. 2010), established a *per se* rule that individual suits are never superior in the FCRA context. Op. 80–81. But *Stillmock* was a very different case—and far better suited to class treatment—because liability was conceded and the class did not suffer from the ascertainability problems that exist here. *See* 385 F. App'x at 273. Nothing warrants extending that non-precedential decision here.

## CONCLUSION

Equifax respectfully requests that this Court grant this petition.

Respectfully submitted,

  /s/ Jeffrey S. Bucholtz

| | |
|---|---|
| Phyllis B. Sumner | Jeffrey S. Bucholtz |
| Zachary A. McEntyre | David M. Barnes |
| Merritt E. McAlister | KING & SPALDING LLP |
| KING & SPALDING LLP | 1700 Pennsylvania Ave., N.W. |
| 1180 Peachtree Street, N.E. | Washington, DC  20006 |
| Atlanta, GA  30309 | Telephone:  (202) 737-0500 |
| Telephone:  (404) 572-4600 | Facsimile:  (202) 636-3737 |
| Facsimile:  (404) 572-5100 | jbucholtz@kslaw.com |
| psumner@kslaw.com | dbarnes@kslaw.com |
| zmcentyre@kslaw.com | |
| mmcalister@kslaw.com | Paul D. Clement |
| | Jeffrey M. Harris |
| | BANCROFT PLLC |
| | 1919 M Street, N.W., Suite 470 |
| | Washington, DC  20036 |
| | Telephone:  (202) 234-0090 |
| | Facsimile:  (202) 234-2806 |
| | pclement@bancroftpllc.com |
| | jharris@bancroftpllc.com |

*Counsel for Defendant-Petitioner*

20

## CERTIFICATE OF SERVICE

This is to certify that I have this 29th day of April, 2015, electronically filed the foregoing Petition for Leave to Appeal Class Certification Order Pursuant To Federal Rule of Civil Procedure 23(f) and Addendum with the Clerk of Court using the CM/ECF system, and will deposit a copy of the same in the United States mail in a properly addressed envelope with sufficient postage affixed thereto to the following:

Leonard Anthony Bennett
Robin Ann Abbott
Susan Mary Rotkis
CONSUMER LITIGATION ASSOCIATES PC
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601

Matthew James Erausquin
Casey Shannon Nash
Janelle Mason Mikac
CONSUMER LITIGATION ASSOCIATES PC
1800 Diagonal Road, Suite 600
Alexandria, VA 22314

Dale Wood Pittman
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
112-A W Tabb Street
Petersburg, VA 2380

*Counsel for the Plaintiff*

  /s/ Jeffrey S. Bucholtz
Jeffrey S. Bucholtz