No. 15-172

# In the United States Court of Appeals for the Fourth Circuit

_____

EQUIFAX INFORMATION SERVICES, LLC,
*Defendant-Petitioner,*

v.

DONNA K. SOUTTER,
for herself and on behalf of all similarly situated individuals
*Plaintiff-Respondent.*

_____

On Appeal from United States District Court for the Eastern
District of Virginia, Richmond Division, No. 3:10-cv-107-REP

## ANSWER IN OPPOSITION TO PETITION FOR INTERLOCUTORY APPEAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(f)

Leonard A. Bennett
Matthew J. Erausquin
Casey S. Nash
Susan M. Rotkis
CONSUMER LITIGATION
ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard
Newport News, VA 23601
(757) 930-3660

Dale W. Pittman
LAW OFFICE OF DALE W. PITTMAN, P.C.
112-A W. Tabb Street
Petersburg, VA 23803
(804) 861-6000

Deepak Gupta
Jonathan E. Taylor
GUPTA BECK PLLC
1735 20th Street, NW
Washington, DC 20009
(202) 888-1741

*Counsel for Plaintiff-Respondent*

# TABLE OF CONTENTS

Table of Authorities ............................................................................................. ii

Introduction .......................................................................................................... 1

Questions presented ............................................................................................. 3

Background ........................................................................................................... 4

Rule 23(f) standards ........................................................................................... 11

Argument ............................................................................................................ 12

    I.    The district court did not abuse its discretion in holding that class members may be readily identified using Equifax's own records ........... 12

    II.    The district court did not abuse its discretion in holding that common issues predominate and that a class action would be superior to other methods of adjudication ............................................. 17

Conclusion .......................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Byrd v. Aaron's Inc.*,
— F.3d —, 2015 WL 1727613 (3d Cir. Apr. 16, 2015) .............................. 15, 17

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d Cir. 2013) ................................................................ 17

*Comcast v. Behrend*,
133 S. Ct. 1426 (2013) ...................................................................... 19

*Dalton v. Capital Associated Industries, Inc.*,
257 F.3d 409 (4th Cir. 2001) ................................................................ 4

*Ealy v. Pinkerton Government Services*,
514 F. App'x 299 (4th Cir. 2013) ........................................................ 19

*EQT Production Co. v. Adair*,
764 F.3d 347 (4th Cir. 2014) ........................................... 1, 12, 13, 16

*Lienhart v. Dryvit Systems, Inc.*,
255 F.3d 138 (4th Cir. 2001) .............................................. 1, 11, 12

*Murray v. GMAC Mortgage Corp.*,
434 F.3d 948 (7th Cir. 2006) .............................................................. 20

*Prado-Steiman v. Bush*,
221 F.3d 1266 (11th Cir. 2000) .......................................................... 11

*Safeco Insurance Co. v. Burr*,
551 U.S. 47 (2007) .............................................................................. 4

*Soutter v. Equifax Information Services, LLC*,
2011 WL 1226025 (E.D. Va. Mar. 30, 2011) .................................. 6, 7

*Soutter v. Equifax Information Services, LLC*,
498 F. App'x 260 (4th Cir. 2012) ................................................... 9, 19

*Stillmock v. Weis Markets, Inc.*,
385 F. App'x  267 (4th Cir. 2010) ............................................... passim

*Young v. Nationwide Mutual Insurance Co.*,
    693 F.3d 532 (6th Cir. 2012) ................................................................. 15

**Statutes**

15 U.S.C. § 1681e(b) ........................................................................... 4, 5

**Rules**

Federal Rules of Civil Procedure 23(b) ............................................... 18

**Treatises**

*McLaughlin on Class Actions* (11th ed.) ............................................ 15

## INTRODUCTION

Invoking Rule 23(f), Equifax urges this Court to grant interlocutory review of a class-certification order in a quintessential consumer class action: a case alleging that a credit-reporting agency's uniform failure to correctly report a single type of information from a single type of source in a single state—after learning that the information was false—violated the Fair Credit Reporting Act.

But this Court makes only "careful and sparing use of Rule 23(f)," recognizing the Court's "limited capacity" for "interlocutory appeals" and the district court's "institutional advantage" in "managing the course of litigation." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 145 (4th Cir. 2001). In a case like this one, in which the petition rests almost entirely on factbound claims that the certification order is "manifestly erroneous," the petitioner must show that the order is not just wrong, but "extreme," and thus "face[s] certain decertification on appeal." *Id.*

Equifax comes nowhere near that high bar. If ever there were a decision that turned on the district court's managerial responsibilities, it is this one. Equifax contends that the court misapplied *EQT Production Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014), which reaffirmed that class members must be "readily identifiable." But *Adair* made clear that this requirement is satisfied when the defendant's own records may be used to identify each class member and the defendant does not contest their accuracy—precisely the situation here. Although Equifax objects that

this process will involve some manual review, the circuits have uniformly held that this is insufficient to deny certification. And the district court found that any such review could be completed "by a handful of attorneys in a matter of days." Op. 18. Equifax also raises predominance and superiority objections that this Court squarely rejected in *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267 (4th Cir. 2010).

Hoping to obscure these defects, Equifax looks back to an earlier appeal, claiming that "many of the same issues that previously precluded certification remain unaddressed." Pet. 9. But Equifax did not even argue ascertainability there, and this case has been fundamentally transformed since then: The class has shrunk from 300,000 to 1,000 people. And, as the district court emphasized at the outset of its 85-page opinion, "Souter has established on remand that certain material representations made by Equifax in its briefs"—including briefs to this Court— "were, in fact, untrue." Op. 3. Those representations weren't peripheral; they created "an inaccurate record" on central, "legally determinative" points. *Id.* at 7.

The shifting factual moorings of Equifax's defense strategy highlight the dangers inherent in interlocutory review of a district judge's management of a class action. It is the district court, not this Court, that is in the best position to assess the truth of the parties' factual representations. This time, this Court should stay its hand and let the district court manage the litigation as it unfolds, reserving any appeal for when it is usually taken: after final judgment.

2

# QUESTIONS PRESENTED

1.    ***Ascertainability.*** Should this Court grant an interlocutory appeal to consider whether the district court manifestly abused its discretion in determining that approximately 1,000 class members could be easily identified using a state-court database and Equifax's own computer records—a ministerial task that the court found could be completed by "a handful of attorneys in a matter of days"?

2.    ***Predominance.*** Should this Court grant an interlocutory appeal to consider whether the district court manifestly abused its discretion in following this Court's unanimous decision in *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267 (4th Cir. 2010), and concluding that the two "most qualitatively significant question[s]"—the reasonableness of Equifax's uniform procedures and the willfulness of its uniform failure to correct inaccurate information after receiving notice—were common and predominated over the mechanical determination of statutory damages, which "is simply a matter of counting heads and data points"?

3.    ***Superiority.*** Should this Court grant an interlocutory appeal to consider whether the district court manifestly abused its discretion in rejecting Equifax's argument that the availability of statutory damages and attorney's fees under the FCRA renders a class action necessarily inferior—the same *per se* rule this Court unanimously rejected in *Stillmock* (and that no circuit has adopted)?

3

## BACKGROUND

**1. The Fair Credit Reporting Act.** "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414 (4th Cir. 2001). "Congress found that in too many instances [consumer-reporting] agencies were reporting inaccurate information" about consumers, often to devastating effect. *Id.* The FCRA thus contains "a variety of measures designed to insure that agencies report accurate information," *id.*—including the bedrock requirement that they "follow reasonable procedures to assure maximum possible accuracy of the information" they report. 15 U.S.C. § 1681e(b). Like other consumer-protection statutes, the FCRA enforces its provisions through a private right of action with a two-tier damages scheme: "If a violation is negligent, the affected consumer is entitled to actual damages. If willful, however, the consumer may have actual damages, or statutory damages ranging from $100 to $1,000." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 53 (2007).

**2. The Facts.** In 2003, after 15 years working for the Virginia State Police, Donna Soutter became very sick and had to leave her job. ECF No. 206-3, at 3. Over the next few years, her health continued to deteriorate and she got behind on a credit card. ECF No. 206-2, at 20. After the lender (a credit union) sued her in a Virginia general district court, she immediately arranged to make payments and make good on her debt—an obligation she has kept to this day. ECF No. 206, at 2.

4

But the credit union apparently did not convey this news to its attorney. In January 2008, without notifying Ms. Soutter, the attorney obtained an uncontested civil judgment against her for the amount of the debt. *Id.* When Soutter learned of the mistake, she contacted the credit union to correct it. *Id.* The credit union did so in February 2008, filing a motion to vacate the mistaken judgment, which the court granted the next month and dismissed the case. *Id.*

Three weeks later, in mid-April 2008, Soutter contacted Equifax to ensure that it did not erroneously report the judgment as unpaid. ECF No. 206-3, at 1. Equifax responded in late May, informing her that it had "contacted each source directly and [its] investigation [was] now completed." *Id.* As a result, Equifax told her, "[t]he disputed judgment . . . is currently not reporting on your credit file." *Id.*

Unfortunately, however, that was not the end of the matter. In December 2008, Soutter discovered that Equifax had been reporting the judgment as unpaid for months (despite being aware of the error) and had furnished at least three credit reports with this false information, causing her to be "denied credit." *Id.* at 1–2.

**3. This Case.** In February 2010, Soutter brought this case, alleging that Equifax willfully violated the FCRA by adopting uniform procedures that failed "to assure maximum possible accuracy" of judgment-disposition information. 15 U.S.C. § 1681e(b). Specifically, she alleged that Equifax and LexisNexis—a public-records vendor that supplies Equifax with "information about all civil judgments

5

entered in cases in the [Virginia] general district courts"—changed the way they collect judgment-disposition information in 2007: They "stopped the more careful process of in-person manual reviews of civil courthouse records, a process which had been in effect for some considerable time, and began collection of judgment information solely from automated resources." *Souter v. Equifax Info. Servs., LLC*, 2011 WL 1226025, *2 (E.D. Va. Mar. 30, 2011) (*Souter I*). Souter further alleged that Equifax compounded this problem by creating skewed incentives, contractually requiring LexisNexis "to collect and report the existence of [all] judgments" against consumers, while excusing it from any obligation "to collect information about the *disposition* of judgments if LexisNexis determined," as it repeatedly did, that this was not "commercially reasonable." *Id.* (emphasis added).

In opposing class certification, Equifax challenged Souter's allegations, highlighting what it claimed were differences in the way it obtained judgment-disposition information. It asserted that "LexisNexis uses independent contractors, or collectors, to obtain information about civil judgments and case dispositions from Virginia's district courts," and "[a]s to case dispositions," "[t]he methods used by each collector vary depending on the [circumstances]." ECF No. 77, at 7–9.

**4. The First Class-Certification Order.** The district court sided with Souter. It held that she had shown that the class definition "sets forth objective parameters with which a class can be ascertained and identified" using Equifax's

6

own records. *Souter I*, 2011 WL 1226025, *6. The court also held that she had met Rule 23(a)'s four prerequisites (numerosity, commonality, typicality, and adequacy), as well as the two requirements of Rule 23(b)(3) (predominance and superiority).

In finding that Souter's claims were typical of the class, the court rejected Equifax's argument that "the variety of procedures used in Virginia courts and by LexisNexis to gather information means that, even if Souter can prove inaccurate reporting and unreasonable procedures in her specific case, the procedures may not be unreasonable with respect to other putative class members." *Id.* at *9. And in finding that common questions predominated over individual issues, the court similarly rejected Equifax's argument that the predominant "issue of 'reasonable procedures' cannot be determined on a classwide basis" because LexisNexis "used different methods to record data obtained from the Virginia courts." *Id.* at *13–14.

Equifax then filed a Rule 23(f) petition in this Court. Its lead argument was that the class was not ascertainable because it was "defined to include persons who have 'suffered damages of less than $1,000,'" which "renders class membership contingent on self-identification." *See* ECF No. 2 in *Equifax Info. Servs., LLC v. Souter*, No. 11-168, at 7–8. Souter subsequently addressed this concern by removing that language from the class definition while the petition was pending.

**5. Equifax's Arguments on Appeal.** After this Court granted the petition, Equifax no longer pressed any ascertainability argument. *See* ECF No. 7 in

*Soutter v. Equifax Info. Servs., LLC*, No. 11-1564 (*Soutter II*). (Its reply brief did not even mention the word. *See* ECF No. 46 in *Soutter II*.) Instead, Equifax focused its appeal on what it called a "massive predominance problem." ECF No. 7 in *Soutter II*, at 27. Equifax claimed that its liability "turns on whether the judgment-disposition retrieval procedures that Equifax had in place at the relevant time and for the relevant court were reasonable." *Id.* at 31. "Because those procedures, and the circumstances surrounding their use, varied widely," Equifax argued, "the reasonableness determination cannot be made on a classwide basis." *Id.* In support of this factual assertion, Equifax relied almost entirely on a single affidavit, which it cited 22 times in its brief to this Court. *See id.* at 13−15, 33−34.

Besides predominance, Equifax made three other arguments against class certification: (1) that the district court's analysis was not rigorous, (2) that Soutter's claim was atypical, and (3) that a class action was not superior to other ways of resolving the dispute. These arguments (typicality in particular) derived from Equifax's predominance argument, which Equifax claimed "infect[ed] all aspects of the district court's certification order." *Id.* at 41. As Equifax put it: Because "the facts and circumstances surrounding collection of the judgment information" in each credit report "var[ies] widely," so too does each claim. *Id.* at 43. Finally, Equifax argued that certification would create "enormous settlement pressure" given the "devastating, disproportionate liability" caused by such a "massive class"

8

(which at the time was estimated to include "300,000 to 600,000 individuals," *id.* at 3, 20), so a class action could not be "superior" to individual suits—an argument that Equifax relegated to the back of its brief. *Id.* at 46–53.

**6. This Court's Decision.** This Court credited Equifax's assertion that "LexisNexis used several different collection methods for capturing the court records," and thus "agree[d] with Equifax that Soutter failed to show typicality." *Soutter II*, 498 F. App'x 260, 262, 264 (4th Cir. 2012). The Court elaborated:

> LexisNexis used in-person review for the circuit court records while employing at least three different means of collecting general district court records during the class period. . . . Soutter's claim simply varies from any potential class plaintiff with a circuit court judgment, and from many potential plaintiffs with general district court judgments, depending on the date of the judgment.

*Id.* at 265. The Court also expressed concern that the class included consumers who had not notified Equifax of the erroneous judgment (as Soutter had), which rendered Soutter's willfulness claim atypical as well. *Id.* Judge Gregory dissented.

**7. Two Important Developments on Remand.** After this Court's decision, this case fundamentally changed in two respects. First, as the district court explained, Soutter "established on remand that certain material representations made by Equifax in its briefs and supporting documents in *Soutter I* and *Soutter II* were, in fact, untrue," meaning that those opinions "rested upon a faulty foundation." Op. 3. The court found that "Equifax blurred the critical difference between the manner in which it collects information about the *entry of judgments* and

the manner in which it collects information about the *disposition of judgments*. The record now shows clearly that LexisNexis followed materially similar procedures for the automated collection of judgment disposition through at least December 2009 and—unlike judgment *entry* information—did not *require* 'runners' to manually collect disposition information." *Id.* at 7.

Equifax has conceded as much. In the district court, it "represented that it no longer relied upon the 2010 affidavit" that it cited 22 times in its brief to this Court. Op. 3, n.1. And, tucked away in a footnote in its petition, Equifax now says that it "regrets the confusion" caused by its misrepresentations. Pet. 7. n.1.

Second, Soutter amended the class definition to address this Court's concerns—reducing the size to roughly 1,000 people. She "narrow[ed] the applicable time period, exclude[d] circuit court judgments, and limit[ed] the class to consumers who had notified Equifax of the disposition of a judgment before Equifax published an inaccurate report." Op. 11.

**8. The Second Class-Certification Order.** In light of these developments, the district court determined that it must "conduct its 'rigorous analysis' anew based on the record as it now stands." *Id.* at 3. The court issued a comprehensive, 85-page decision carefully explaining why the new class, based on the new facts, satisfied Rule 23. The court found that Soutter had shown that the class is ascertainable and meets the requirements of both Rule 23(a) and (b)(3).

10

## RULE 23(f) STANDARDS

This Court has adopted the Eleventh Circuit's test for determining whether to grant a Rule 23(f) petition, which considers (1) whether the certification ruling is likely dispositive; (2) whether it contains a substantial weakness; (3) whether the appeal raises important and unsettled questions of law; (4) the nature and status of the litigation; and (5) the likelihood that future events will make appellate review unlikely or unnecessary. *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 144–46 (4th Cir. 2001) (citing *Prado-Steiman v. Bush*, 221 F.3d 1266, 1274–76 (11th Cir. 2000)). The substantial-weakness factor, "viewed in terms of the likelihood of reversal under an abuse of discretion standard, operates on a 'sliding scale' in conjunction with the other factors." *Id.* at 145. Only "[i]n extreme cases, where decertification is a functional certainty," may this factor "alone suffice" for immediate review. *Id.*

Because Rule 23(f) appeals are "inherently disruptive, time-consuming, and expensive," they are "generally disfavored" under the five-factor test. *Prado-Steiman*, 221 F.3d at 1276. The test is designed to encourage "restraint in accepting Rule 23(f) petitions," insisting that the petitioner show a truly "compelling need for resolution of the legal issue sooner rather than later." *Id.* at 1274. Short of that, the Court "should err, if at all, on the side of allowing the district court an opportunity to fine-tune its class certification order rather than opening the door too widely to interlocutory appellate review." *Id.*

11

## ARGUMENT

Equifax asks this Court to review narrow, factbound questions in a modest class action. Because that puts this case at the far end of *Lienhart*'s sliding scale, Equifax tries to persuade this Court that this is one of the "extreme cases" in which the order is "manifestly erroneous" and "face[s] certain decertification on appeal." 255 F.3d at 145. It does not come close to doing so.

## I.    The district court did not abuse its discretion in holding that class members may be readily identified using Equifax's own records.

Equifax's primary bid for manifest error is its contention (at 1) that the district court "misapplied this Court's most recent class-action precedent, *EQT Production Co. v. Adair*, 764 F.3d 347 (2014)," which reaffirmed that Rule 23 requires that "members of a proposed class be 'readily identifiable,'" Op. 15. But the district court did not "misapply" that holding—as *Adair* itself shows.

*Adair* involved putative classes of current and former property owners asserting claims against methane-gas producers for failing to pay royalties. 764 F.3d at 352. After the district court certified the classes—adopting a magistrate judge's opinion that devoted a single paragraph to why they were ascertainable—this Court reversed, concluding that the district court "failed to rigorously analyze whether the administrative burden of identifying class members . . . would render class proceedings too onerous." *Id.* at 358.

12

The potential problem was that the classes were "defined to include both former and current gas estate owners," and "ownership of [each] estate had not been static." *Id.* at 359. Although the defendants had previously "prepared ownership schedules listing all the potential interest holders," many of those records "were prepared some twenty years ago" and "ha[d] not been updated to account for changes in ownership." *Id.* at 353. Were that not so, "identifying class membership" would be "as simple as cross-referencing [records] the defendants themselves prepared," and hence the class would be ascertainable. *Id.* at 359. But as it was, the unreliable records could not "aid a court" in ascertaining class membership. *Id.* Because the district court "glossed over this problem, merely noting that any ownership changes could be determined by reference to local land records"—without explaining how that process would work—this Court remanded to let the court "reconsider the ascertainability issues" posed by using land records, and to "assess whether any trial management tools [could] ease this process." *Id.* at 359–60.

This case raises no such concerns. For starters, the district court spent ten pages rigorously analyzing ascertainability. Op. 15–24. The court found that Soutter's proposed process for identifying class members is both administratively feasible and based on objective criteria. *Id.* at 15–18. As Soutter detailed below, consumers who meet the class definition's first two elements (those with district-

court judgments against them that were later dismissed, satisfied, appealed, or vacated) can be readily determined based on records from the Virginia Supreme Court. This automated process was easily completed in a similar lawsuit against Trans Union—involving a class roughly 150 times bigger than this one—and can be done so here as well. *See* ECF No. 215, at 7. In fact, Soutter has already provided this information to Equifax, and thus can "easily create a list of consumers about whom [Equifax] should [not] have reported an unpaid judgment after a specific date." *Id.* That is nothing like the unspecified use of land records to resolve thorny property disputes in *Adair*.

So Equifax takes aim at the last two elements of the class definition—both of which will be determined using Equifax's own records. The first asks whether those "records note [the] receipt of a communication or dispute" from the consumer about the relevant judgment's status. Op. 84. The second asks whether the records indicate that Equifax furnished a credit report on the consumer (i) after the dispute was made, (ii) at least 30 days before Equifax corrected the judgment notation, and (iii) within a specified five-year timeframe. *Id.* at 85.

The district court squarely addressed these two criteria and explained why they are ascertainable. As to the first: The court noted that "Equifax has already proven its ability to determine whether and when a consumer has notified it of an inaccurate Virginia judgment" by doing so in this litigation. *Id.* at 20. Whenever a

14

consumer disputes credit information, Equifax records the dispute by selecting one of four "dispute codes" and entering it into the consumer's file. *See* ECF No. 215, at 8. These codes are easily searchable and pose no barrier to class certification. "What was ascertainable to [Equifax] in the course of adhering to its own policy is ascertainable for the purposes of identifying members of the class." Op. 20.

As to the second criterion: Although Equifax complains that answering this question will entail "some degree of manual review" of its own files, *id.* at 16, "the need to review individual files" to ascertain class membership is "not [a] reason[] to deny class certification," *Byrd v. Aaron's Inc.*, — F.3d —, 2015 WL 1727613, *11 (3d Cir. 2015); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539–40 (6th Cir. 2012) (same; collecting cases). A defendant often must "assist the plaintiff in ascertaining the identity of putative class members" by providing information, and the "administrative burden" of doing so "ordinarily does not constitute an inability to identify class members." 1 *McLaughlin on Class Actions* § 4.2 (11th ed.).

That burden is particularly slight here because any manual review will be circumscribed and mechanical: As the district court recognized, Equifax need only access the archive it maintains in each consumer's file for the relevant month and then (with the help of class counsel) make a few "readily discernable" and "binary" determinations to see if that person is a class member. Op. 18. (Soutter has even offered to "absorb the burden of completing the class list" based on the information

provided by Equifax. ECF No. 206, at 16.) The district court found that these efforts "would reach approximately 1,000 consumers" and could be done "by a handful of attorneys in a matter of days." Op. 18.

The only way a dispute could arise is if Equifax were to contest the accuracy of its own archives. But unlike the defendant in *Adair*, Equifax does not claim that its records are unreliable. Quite the opposite: As the district court noted, Equifax touts its "state-of-the-industry" database and "unparalleled" ability to "organize[], assimilate[,] and analyze[] data on more than 600 million consumers and more than 80 million businesses worldwide." *Id.* at 19. The district court did not abuse its discretion by crediting this assertion, nor by following this Court's recognition that a class is ascertainable when "identifying class membership" is "as simple as cross-referencing" records that the defendant itself has prepared. *Adair*, 764 F.3d at 359.

Seeking to resist this conclusion, Equifax claims that the district court's order "fail[s] to ensure that only individuals for whom an inaccurate credit report was issued will be included in the class." Pet. 13. Yet the one example Equifax gives actually proves otherwise. Equifax conjures up a hypothetical consumer for whom "there would be no way to know whether the judgment was deleted before or after the [credit] report was issued—and thus no way to determine whether the report was 'inaccurate.'" *Id.* That consumer, however, *would not be a class member*. Only those consumers whose credit reports were furnished at least 30 days "before the

16

judgment notation was corrected" will fit the class definition, Op. 11, thereby ensuring that the definition does not (as Equifax baselessly asserts) "sweep into the class persons for whom Equifax never issued an inaccurate report," Pet. 2.

Finally, Equifax seeks solace in the Third Circuit's case law, relying on *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013). But that case addressed the scenario in which consumer affidavits alone are used because "class members *cannot be ascertained* from a defendant's records." *Id.* at 304 (emphasis added). Where, as here, the defendant's "own records reveal" the information needed to determine class membership, that "is a far cry from an unverifiable affidavit"—as the Third Circuit recently made clear. *Byrd*, 2015 WL 1727613, *9–10. When that is the case, Rule 23's "narrow" ascertainability requirement is satisfied because "[t]here are 'objective records' that can 'readily identify' [the] class members." *Id.* at *6, *9. The district court did not abuse its discretion in holding the same.

## II.    The district court did not abuse its discretion in holding that common issues predominate and that a class action would be superior to other methods of adjudication.

Equifax also insists that the district court manifestly erred in holding that common issues predominate. To substantiate this claim, Equifax must show that the court abused its discretion by following this Court's decision in *Stillmock*, 385 F. App'x 267, and by concluding that the two "most qualitatively significant question[s]"—the reasonableness of uniform procedures and the willfulness of

uniform conduct—predominate over a damages determination that "is simply a matter of counting heads and data points." Op. 74, 78. That is a tall order.

**1.** The petition first argues that the inaccuracy of the consumer reports is an individual issue that defeats certification. But because the class definition virtually ensures that every class member will satisfy this element, this argument simply repackages Equifax's failed ascertainability argument. As explained above, the court was well within its discretion in finding that ascertaining class membership is a mechanical exercise consisting of "readily discernible" and "binary determinations." *Id.* at 18. As the court put it: "The inaccuracy at issue in this case involves one variable that is inaccurate in a common manner across the class and is easily verifiable by reference to a single court-run database without resorting to complex 'mini-trials.'" *Id.* at 31. Equifax's only response is a factbound quibble with the conclusion that this common proof is manageable, based on the same exaggerated "administrative burdens" and "feasibility questions" that drove the ascertainability argument. Pet. 16. That gambit fails for the same reasons.

**2.** Equifax next claims that the order is manifestly erroneous because statutory damages entail individualized determinations. But this Court rejected that very argument in *Stillmock*: Where liability issues are common, "individual statutory damages issues are insufficient to defeat class certification." 385 F. App'x at 273. This Court reasoned that Rule 23(b)'s predominance requirement was met because

18

"the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statue in the identical manner." *Id.*

The district court did not abuse its discretion by following *Stillmock*. Nor did this Court overrule *Stillmock* when it noted that statutory damages "typically require an individualized injury." *Souter II*, 498 F. App'x at 265. The question here is not whether statutory damages are "individualized" but whether common questions predominate. And "common issues of liability may still predominate even when some individualized inquiry is required." *Ealy v. Pinkerton Gov't Servs.*, 514 F. App'x 299, 305 (4th Cir. 2013).[1]

**3.** Finally, in a Hail Mary pass, Equifax throws out an argument that would doom all FCRA class actions: because "FCRA makes individual suits a practical alternative, even for small claims," individual lawsuits must be superior to a single class action. Pet. 17. This argument, too, runs straight into *Stillmock*, which rejected

---

[1] *Comcast v. Behrend*, 133 S. Ct. 1426 (2013), does not help Equifax. The plaintiffs there alleged four antitrust-injury theories, only one capable of classwide proof. *Id.* at 1430–31. So the plaintiffs had to show "that the damages resulting from *that injury*" could be measured using a "common methodology." *Id.* at 1430, 1433. The plaintiffs' model, however, "failed to measure damages resulting from the particular antitrust injury on which" liability was premised, instead "assum[ing] the validity of all four theories of antitrust impact" even though only one "remained in the case." *Id.* at 1433–34. Because this methodology "identifie[d] damages that [were] not the result of the wrong," Rule 23 was not satisfied. *Id.* at 1434. Here, by contrast, there is a single theory of liability, damages are tied directly to that theory, and damage calculations will be ministerial.

19

the same argument as "without merit" for two reasons: "First, the low amount of statutory damages" makes "an individual action unattractive from a plaintiff's perspective." 385 F. App'x at 274. Second, "there is no reasoned basis to conclude" that fees and statutory damages "will result in enforcement of FCRA by individual actions of a scale comparable to the potential enforcement by way of class action." *Id.* The district court did not abuse its discretion by again "follow[ing] in *Stillmock*'s footsteps." Op. 82. Equifax points to no precedent—from this Court or from any other circuit—holding that it is an *abuse of discretion* to certify an FCRA class action simply because the statute allows for statutory damages and attorneys' fees. To hold otherwise would nullify the statutory scheme. "While a statute remains on the books, however, it must be enforced rather than subverted." *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, 953–54 (7th Cir. 2006) (Easterbrook, J.). "Reducing recoveries by forcing everyone to litigate independently—so that . . . the [FCRA] cannot be enforced by more than a handful of victims—has little to recommend it." *Id.*

## CONCLUSION

The petition for permission to appeal should be denied.

Respectfully submitted,

*/s/ Deepak Gupta*
Deepak Gupta
Jonathan E. Taylor
Gupta Beck PLLC
1735 20th Street, NW
Washington, DC 20036
(202) 888-1741
*deepak@guptabeck.com*

Leonard A. Bennett
Matthew J. Erausquin
Casey S. Nash
Susan M. Rotkis
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Boulevard
Newport News, VA 23601
(757) 930-3660

Dale Wood Pittman
Law Office of Dale W. Pittman, P.C.
112-A W. Tabb Street
Petersburg, VA 23803
(804) 861-6000

May 13, 2015                *Counsel for Plaintiff-Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2015, I electronically filed the foregoing answer with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system.

*/s/ Deepak Gupta*
Deepak Gupta

22